IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PAUL J. MANAFORT, JR., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**COMPLAINT**

The United States of America brings this action to collect outstanding civil penalties assessed against Defendant Paul J. Manafort for his willful failure to timely report his financial interest in foreign bank accounts, as required by 31 U.S.C. § 5314 and its implementing regulations. The United States also seeks to collect accrued interest on the penalties and late payment penalties under 31 U.S.C. § 3717.

**JURISDICTION AND VENUE**

1. The United States brings this suit under 31 U.S.C. §§ 5321(b)(2) and 3711(g)(4)(C). The suit is filed at the direction of a delegate of the Attorney General and at the request of, and with the authorization of, a delegate of the Secretary of the Treasury.

2. The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 1355 because it arises under a federal statue, the United States is the plaintiff, and the action seeks recovery of federal civil penalties.

3. Venue is proper in this district under 28 U.S.C. § 1391(c)(1). Manafort's domicile is in Palm Beach County, Florida. Further, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this judicial district through

Manafort's filing of tax returns from his home. Finally, venue is proper in this district under 28 U.S.C. § 1395(a) because a civil proceeding for the recovery of a penalty may be prosecuted in the district where it accrues or the defendant is found.

## STATUTORY AND REGULATORY BACKGROUND REGARDING THE DUTY TO REPORT FOREIGN FINANCIAL ACCOUNTS

4. Section 5314 of Title 31 of the U.S. Code authorizes the Secretary of the Treasury to require United States citizens to report certain transactions with foreign financial agencies. Under the statute's implementing regulations, "[e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such a relationship exists." 31 C.F.R. § 1010.350(a).

5. A United States person has a financial interest in an account if the owner of record is a person acting as an agent, nominee, attorney, or in some other capacity on behalf of the United States person with respect to the account. 31 C.F.R. § 1010.350(e)(2)(i).

6. To fulfill the reporting requirement, a person must file a Report of Foreign Bank and Financial Accounts, commonly known as an "FBAR." During the years at issue, the FBAR was due by June 30 of the following calendar year. It required filers to report each financial account, provided the individual has aggregate balances across all foreign accounts exceeding $10,000 during the previous year. 31 C.F.R. § 1010.306(c) (2010). The FBAR required the filer to disclose, among other things, the maximum value of each foreign account during the calendar year reported; the type of account; the name of the financial institution in which the account is held; the account number; and the mailing address of the financial institution in which the account is held.

7. Schedule B (Form 1040), Interest and Dividends, is an attachment to the federal individual income tax return that is used for reporting, among other things, interest and dividend income. It also requires taxpayers to report any financial interest in, or signature or other authority over, financial accounts located in foreign countries. Schedule B refers to the FBAR filing requirement and alerts the taxpayer that if he or she had an interest in, or signature or other authority over a financial account located in a foreign country, the taxpayer should see the instructions for the exceptions and filing requirements for FinCEN Form 114—the FBAR.

8. Section 5321(a)(5) of Title 31 authorizes the imposition of civil penalties for failure to comply with the reporting requirements of § 5314. Specifically, § 5321(a)(5)(C) provides for a willful penalty equal to the greater of $100,000 or 50% of the balance in the account at the time of the violation.

9. A penalty assessed under 31 U.S.C. § 5321(a)(5)(C) is subject to interest and failure to pay penalties under 31 U.S.C. § 3717.

## FACTUAL BACKGROUND

10. Manafort is a United States citizen, and he was a U.S. citizen at all times relevant to this complaint. After earning a bachelor's degree in business administration and a Juris Doctor degree from Georgetown University, Manafort began a career as a political aide, consultant, and lobbyist. Manafort lobbied on behalf of individuals and entities both in the United States and in foreign countries.

11. For calendar years 2013 and 2014, Manafort hired an accountant to prepare his federal income tax returns. He did not report his interest in foreign accounts on his federal income tax returns or through a timely filed FBAR for calendar years 2013 and 2014.

**Manafort's Foreign Financial Accounts**

12.     Starting around 2006, Manafort conducted consulting work through DMP International, LLC ("DMP") or a related entity DMP International, Inc., in Ukraine.

13.     DMP registered as an LLC in Delaware in 2011. DMP registered as a foreign LLC operating in the State of Florida in 2012 and remains in active standing today. The LLC's registration lists its principal place of business as Manafort's home in Palm Beach Gardens, FL. Manafort serves as its manager.

14.     To assist Manafort's work, DMP employed two additional individuals: Richard W. Gates III, and Konstantin Kilimnik.

15.     From 2006 through sometime in 2014, DMP earned consulting income from Ukrainian sources. This income was deposited into accounts Manafort directed to be opened in the countries of Cyprus, St. Vincent and the Grenadines, and the United Kingdom. These accounts, described in paragraphs 19-22, are referred to below as "the accounts."

16.     In some instances, Manafort was listed as an authorized signer or beneficial owner of the account. However, many of the accounts were held without the use of Manafort's name at all. Rather, the accounts were held in the name of nominee shell corporations opened or operated by individuals, including Gates and Kilimnik, on Manafort's behalf.

17.     Regardless, Manafort still exercised control over, and had access to, each of the accounts.

18.     The names of the shell corporations that operated as Manafort's nominees are:

    a.      Actinet Trading Limited;

    b.      Bletilla Ventures Limited;

    c.      Global Endeavour, Inc.;

    d.    Jeunet, Ltd.;

    e.    LOAV Advisors Limited;

    f.    Lucicle Consultants Limited;

    g.    Marziola Holdings Limited;

    h.    Olivenia Trading Limited;

    i.    Pompolo Limited; and

    j.    Yiakora Ventures Limited.

19. In 2013, Manafort held a financial interest in the following eight foreign financial accounts as the listed beneficial owner, as a person with signature authority, or both. The "account name" column reflects that the account was held at Bank of Cyprus and the last four digits of the account number.

| Account Name | Account Owner | Location | Account Relationship |
| --- | --- | --- | --- |
| Cyprus 9326 | Actinet Trading | Cyprus | Listed Beneficial Owner and Authorized Signer |
| Cyprus 9815 | Actinet Trading | Cyprus | Listed Beneficial Owner and Authorized Signer |
| Cyprus 0480 | Bletilla Ventures | Cyprus | Listed Beneficial Owner |
| Cyprus 0791 | Bletilla Ventures | Cyprus | Listed Beneficial Owner |
| Cyprus 9075 | LOAV Advisors | Cyprus | Listed Beneficial Owner |
| Cyprus 9334 | Lucicle Consultants | Cyprus | Authorized Signer |
| Cyprus 9823 | Lucicle Consultants | Cyprus | Authorized Signer |
| Cyprus 09-06 | Yiakora Ventures | Cyprus | Listed Beneficial Owner |

20. In addition to the accounts listed above, during 2013, Manafort had a financial interest in, or other authority over, fourteen more foreign financial accounts because he had the ability to direct and control the use of the funds in the accounts. Manafort transferred funds to his domestic United States accounts, paid DMP's expenses, and paid for his personal expenses via transfers from these accounts that he directed. The accounts were held at Bank of Cyprus,

Hellenic Bank, HSBC, or Loyal Bank Limited. The numbers in the "account name" column reflect the last four digits of the account number.

| Account Name | Account Owner | Location | Account Relationship |
|---|---|---|---|
| Hellenic 18-01 | Actinet Trading | Cyprus | Ability to direct and control use of funds |
| Hellenic 18-01(2) | Actinet Trading | Cyprus | Ability to direct and control use of funds |
| Hellenic 25-01 | Bletilla Ventures | Cyprus | Ability to direct and control use of funds |
| Hellenic 25-01(2) | Bletilla Ventures | Cyprus | Ability to direct and control use of funds |
| Hellenic 23-01 | Lucicle Consultants | Cyprus | Ability to direct and control use of funds |
| Hellenic 23-01 (2) | Lucicle Consultants | Cyprus | Ability to direct and control use of funds |
| Hellenic 15-01 | Marziola Holdings | Cyprus | Ability to direct and control use of funds |
| Cyprus 2557 | Olivenia Trading | Cyprus | Ability to direct and control use of funds |
| Cyprus 2556 | Olivenia Trading | Cyprus | Ability to direct and control use of funds |
| Hellenic 24-01 | Olivenia Trading | Cyprus | Ability to direct and control use of funds |
| HSBC 2057 | Pompolo Ltd. | United Kingdom | Ability to direct and control use of funds |
| Loyal 1840 | Global Endeavour | St. Vincent and the Grenadines | Ability to direct and control use of funds |
| Loyal 1978 | Global Endeavour | St. Vincent and the Grenadines | Ability to direct and control use of funds |
| Loyal 4978 | Jeunet Ltd. | St. Vincent and the Grenadines | Ability to direct and control use of funds |

21.     With the exception of Hellenic 23-01 and Hellenic 23-01(2), held in the name of Lucicle Consultants, all of the accounts referenced in paragraph 20 listed both Gates and Kilimnik as beneficial owners. The Lucicle Consultants accounts only listed Gates as a beneficial owner.

22.     In 2014, Manafort continued to have a financial interest in, or other authority over, three foreign financial accounts because he had the ability to direct and control the use of

the funds in the accounts. Manafort transferred funds to his domestic United States accounts, paid DMP's expenses, and paid for his personal expenses via transfers from these accounts that he directed.

| Account Name | Account Owner | Location | Account Relationship |
|---|---|---|---|
| Loyal 1840 | Global Endeavour | St. Vincent and the Grenadines | Ability to direct and control use of funds |
| Loyal 1978 | Global Endeavour | St. Vincent and the Grenadines | Ability to direct and control use of funds |
| Loyal 4978 | Jeunet Ltd. | St. Vincent and the Grenadines | Ability to direct and control use of funds |

**Manafort's Failure to Timely Report His Interest in Foreign Financial Accounts**

23. The foreign financial accounts listed in paragraphs 19 and 20 had an aggregate maximum balance during 2013 that exceeded $10,000. Manafort was required to file an FBAR reporting his interests in the accounts no later than June 30, 2014. Manafort was also required to report his interests in the accounts on Schedule B to his 2013 federal individual income tax return.

24. Manafort has never filed an FBAR reporting his interest in foreign accounts for 2013.

25. Manafort filled out a Schedule B as part of his 2013 Form 1040. The Schedule B contained the following question: "At any time during 2013, did you have a financial interest in or signature or other authority over a financial account in a foreign country, such as a bank account, securities account or other financial account?" Manafort incorrectly marked "No."

26. The foreign financial accounts listed in paragraph 22 had an aggregate maximum balance during 2014 that exceeded $10,000. Manafort was required to file an FBAR reporting his interests in the accounts no later than June 30, 2015. Manafort was also required to report his interests in the accounts on Schedule B to his 2014 federal individual income tax return.

7

27. Manafort has never filed an FBAR reporting his interest in foreign accounts for 2014.

28. Manafort filled out a Schedule B as part of his 2014 Form 1040. The Schedule B contained the following question: "At any time during 2014, did you have a financial interest in or signature or other authority over a financial account in a foreign country, such as a bank account, securities account or other financial account?" Manafort incorrectly marked "No."

### Manafort's Criminal Cases, Pleas of Guilt, and Presidential Pardon

29. During the presidential election campaign of 2016, Manafort was hired as campaign manager for President Donald Trump. During and after the 2016 campaign, allegations surrounding the election and certain foreign agent lobbying arose and a special counsel was appointed to investigate. As a result of that investigation, two separate criminal cases were brought against Manafort: *United States v. Manafort et al.,* Case No. 1:17-cr-201 (D.C.) ("D.C. Case") and *United States v. Manafort et al.,* Case No. 1:18-cr-83 (E.D. Va.) ("Virginia Case").

30. The Virginia Case went to trial on July 31, 2018. On August 21, 2018, the jury returned guilty verdicts for eight counts, including Count 12, which criminally charged Manafort with the failure to file an FBAR for the 2012 calendar year in violation of 31 U.S.C. § 5322. The jury failed to reach a verdict, and the court declared a mistrial, on the remaining counts. Virginia Case, ECF 257 & 280.

31. In the D.C. Case, a final superseding information was filed against Manafort on September 14, 2018. On the same day, Manafort pleaded guilty to the two counts contained in the information. One of the counts was a conspiracy charge under 18 U.S.C. § 371. The information alleged that Manafort "conspired . . . to commit offenses against the United States,

to wit, . . . (b) tax fraud (in violation of 26 U.S.C. § 7206(1)); [and] (c) failing to file Foreign Bank Account Reports (in violation of 31 U.S.C. §§ 5312 and 5322(b))."

32. As part of his plea to the superseding information in the D.C. Case, Manafort agreed that the jointly filed Statement of the Offenses and Other Acts fairly and accurately described his actions and involvement. DC Case, ECF 423, 424.

33. The Statement of the Offenses and Other Acts, filed at ECF No. 423 in the D.C. Case, detailed Manafort's willful failure to comply with the FBAR filing requirements for several years, including 2013 and 2014:

> From 2008 through 2014, MANAFORT caused millions of dollars of wire transfers to be made from offshore nominee accounts, without paying taxes on that income…
>
> MANAFORT directly and through Gates repeatedly mislead his bookkeeper and tax accountants, including by not disclosing Manafort's overseas accounts and income…
>
> MANAFORT owned and controlled a range of foreign bank accounts in Cyprus, the Grenadines, and the United Kingdom. MANAFORT directly and through Gates maintained these accounts, including by managing them and by making substantial transfers from the accounts to both himself and vendors for personal items and his family. MANAFORT was aware that many of these accounts held well in excess of $10,000 in the aggregate at some point during each year in which they existed. MANAFORT did not report the accounts' existence to his bookkeeper and his tax preparers in an effort to hide them, and to avoid disclosing their existence on an FBAR filing.
>
> … MANAFORT was also aware that it was illegal to fail to report information to the IRS regarding the existence of foreign bank accounts, as required by Schedule B of the IRS Form 1040. MANAFORT also understood at the time that a U.S. person who had a financial interest in, or signature or other authority over, a bank account or other financial account in a foreign country, which exceeded $10,000 in any one year (at any time during that year), was required to report the account to the Department of the Treasury…
>
> Knowing the existence of his reportable foreign accounts and hidden income, MANAFORT knowingly, intentionally, and willfully filed and

9

       conspired to file false tax returns from 2006-2015 in that he said he did not have reportable foreign bank account when he knew that he did, he did not report income that he knew he in fact had earned, and he did not file Foreign Bank Account Reports.

34. The courts in the D.C. Case and the Virginia case entered judgments finding Manafort guilty. Manafort was sentenced to prison.

35. On December 23, 2020, President Donald Trump pardoned Paul Manafort for his convictions in the D.C. Case and the Virginia Case.

## CLAIMS FOR RELIEF

### Count I
### (Judgment for Unpaid 2013 FBAR Penalty Pursuant to 31 U.S.C. § 5321)

36. In 2013, Manafort had a financial interest in or signature authority over at least 18 accounts in Cyprus, one account in the United Kingdom, and three accounts in St. Vincent and the Grenadines, identified in paragraphs 19 and 20, in which the maximum aggregate balance exceeded $10,000.

37. Manafort was required to report to the United States his interest in these foreign accounts in an FBAR filed on or before June 30, 2014.

38. Manafort's failure to report these accounts in a timely-filed FBAR was willful within the meaning of 31 U.S.C. § 5321(a)(5).

39. Of the 22 accounts identified in paragraphs 19 and 20, nineteen had a zero balance as of June 30, 2014, and two had a balance of less than $200,000. The other account, Loyal 4978, held in the name of Jeunet Ltd. in St. Vincent and the Grenadines, had a balance of $443,594 as of June 30, 2014.

40. On May 5, 2020, a delegate of the Secretary of the Treasury, in accordance with 31 U.S.C. § 5321, timely assessed against Manafort a penalty for his willful failure to timely file a 2013 FBAR.

41. This claim is timely because it was filed less than two years from the date of the assessment. 31 U.S.C. § 5321(b)(2).

42. On July 23, 2020, a delegate of the Secretary of the Treasury sent Manafort notice of the assessment of the 2013 FBAR penalties and demand for payment.

43. Despite notice and demand for payment, Manafort has failed to pay the penalties assessed against him. As a result, he owes the United States $2,321,797 for the willful FBAR penalty for 2013, plus interest and failure to pay penalty under 31 U.S.C. § 3717, and associated fees. Interest and statutory additions continue to accrue.

## Count II
**(Judgment for Unpaid 2014 FBAR Penalty Pursuant to 31 U.S.C. § 5321)**

44. In 2014, Manafort had a financial interest in or signature authority over at least three accounts in St. Vincent and the Grenadines, identified above in paragraph 22, in which the aggregate balance exceeded $10,000.

45. Manafort was required to report to the United States his interest in the foreign accounts in an FBAR filed on or before June 30, 2015.

46. Manafort's failure to report these accounts in a timely-filed FBAR was willful within the meaning of 31 U.S.C. § 5321(a)(5).

47. Each of the three accounts identified in paragraph 22 had a balance of less than $200,000 as of June 30, 2015.

48. On May 5, 2020, a delegate of the Secretary of the Treasury, in accordance with 31 U.S.C. § 5321, timely assessed against Manafort a penalty for his willful failure to timely file a 2014 FBAR.

49. This claim is timely because it was filed less than two years from the date of the assessment. 31 U.S.C. § 5321(b)(2).

50. On July 23, 2020, a delegate of the Secretary of the Treasury sent Manafort notice of the assessment of the 2014 FBAR penalties and demand for payment.

51. Despite the notice and demand for payment, Manafort failed to pay the penalties assessed against him. As a result, he owes $300,000 for the willful FBAR penalty for 2014, plus interest and a failure to pay penalty under 31 U.S.C. § 3717, and associated fees. Interest and statutory additions continue to accrue.

WHEREFORE, the United States of America requests that the Court:

A. Enter judgment against Paul J. Manafort and in favor of the United States as to Counts I through II in the amount of $2,976,350.15 for the FBAR penalties assessed against him for calendar years 2013 and 2014 under 31 U.S.C. § 5321(a)(5); interest pursuant to 31 U.S.C. § 3717(a)-(c) through April 1, 2022; and late payment penalties pursuant to 31 U.S.C. § 3717(e)(2) through April 1, 2022;

B. That the Court award the United States post-judgment interest under 28 U.S.C. § 1961 and post-judgment failure-to-pay penalties under 31 U.S.C. § 3717(e) to the date of payment; and

C. Award the United States its costs incurred in connection with this action, along with such other relief as justice requires.

Dated: April 28, 2022                                 Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

/s/ Conor P. Desmond
CONOR P. DESMOND
Fla Bar. No. A5502587
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C.  20044
202-616-1857 (v)
202-514-4963 (f)
Conor.P.Desmond@usdoj.gov

Of counsel:
Juan Antonio "Tony" Gonzalez
United States Attorney
Southern District of Florida